UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON JONES,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>P. D. BRAZELTON,<br><br>　　　　　Defendant. | No. 2:13-cv-01379-JAM-KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　Petitioner is a state prisoner, proceeding in forma pauperis and without counsel, in this habeas corpus action filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2007 conviction for involuntary manslaughter and assault resulting in the death of a child under age eight; and his 2008 sentence to an indeterminate state prison term of twenty-five years to life. Pending is respondent's motion to dismiss, on the ground that petitioner initiated this action beyond the one-year statute of limitations, and is not entitled to equitable tolling. See 28 U.S.C. § 2244(d).

　　For the reasons that follow, the undersigned recommends that respondent's motion to dismiss be granted.

////

////

1

II. <u>Legal Standards</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . .

28 U.S.C. § 2244(d)(1).

Section 2244(d)(2) authorizes statutory tolling of the limitations period, by providing that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitation period. 28 U.S.C. § 2244(d)(2).

Equitable tolling is also authorized under limited circumstances. The United States Supreme Court has held that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>see also</u> <u>Lawrence v. Florida</u>, 549 U.S. 327, 328 (2007) (assuming without deciding that equitable tolling applies to Section 2244(d)). "[T]he purpose of equitable tolling 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." <u>Harris v. Carter</u>, 515 F.3d 1051, 1055 (9th Cir. 2008). However, "[t]he high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." <u>Lakey v. Hickman</u>, 633 F.3d 782, 786 (9th Cir. 2011) (citations and internal quotation marks omitted). As a result, equitable tolling is not available to most petitioners seeking to overcome AEDPA's statute of limitations. <u>Corjasso v. Ayers</u>, 278 F.3d 874, 877 (9th Cir. 2002); <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999). The "determination is highly fact-dependent and [petitioner] bears the burden of showing that equitable tolling is appropriate." <u>Espinoza-Matthews v. California</u>, 432 F.3d 1021, 1026 (9th Cir. 2005).

////

2

A habeas petitioner seeking equitable tolling must show that the alleged extraordinary circumstance was the "but for" and proximate cause of the untimely filing of his federal petition. Bryant v. Arizona Attorney General, 499 F.3d 1056, 1061 (9th Cir. 2007); Allen v. Lewis, 255 F.3d 798, 800-01 (9th Cir. 2001). "A petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence." Bryant, 499 F.3d at 1061 (citing Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006)); see also Shannon v. Newland, 410 F.3d 1083, 1090 (9th Cir. 2005) (noting that cases finding an extraordinary circumstance have generally been based on the "wrongful conduct" of another that "actually prevented the prisoner from preparing or filing a timely habeas petition").

Finally, "[t]he diligence required for equitable tolling is 'reasonable diligence,' not 'maximum feasible diligence.'" Doe v. Busby, 661 F.3d 1001, 1012 (9th Cir. 2011) (quoting Holland v. Florida, 560 U.S. 631, 653 (2010) (internal quotation marks omitted) (also citing Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is reasonable diligence."). "The purpose of requiring a habeas petitioner to show diligence is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file." Doe, 661 F.3d at 1013 (citations omitted).

III. Relevant Chronology

1. Petitioner was convicted on July 5, 2007, and sentenced on May 2, 2008, in Sacramento County Superior Court. (Dfs. Ldgd. Doc. 1.)

2. On June 8, 2011, the California Court of Appeal, Third District, affirmed the judgment, but directed the trial court to correct the abstract of judgment by deleting the booking and classification fees, and remanded the matter to the trial court to determine whether to impose restitution. (Dfs. Ldgd. Doc. 2.)

3. On July 19, 2011, petitioner filed a petition for review in the California Supreme Court, which was denied on September 21, 2011. (Dfs. Ldgd. Docs. 3-4.)

4. In November and December 2011, further proceedings were held in the Sacramento County Superior Court, consistent with the order of the Court of Appeal. On December 12, 2011,

the trial court set restitution and issued an amended abstract of judgment.  (Dfs. Ldgd. Doc. 5.)

   5.  Petitioner did not appeal the trial court's December 12, 2011 amended judgment.

   6.  Petitioner did not file any state court post-conviction collateral challenges to his conviction or sentence.

   7.  On June 28, 2013, petitioner filed his initial federal petition for writ of habeas corpus in this action (ECF No. 1); on November 6, 2013, with the court's authorization (ECF No. 12), petitioner filed the operative amended federal petition (ECF No. 13).[1]

IV.  Petitioner's Arguments in Support of Equitable Tolling

After the trial court issued an amended abstract of judgment on December 12, 2011, petitioner could have, but did not, appeal that judgment.  As a result, the judgment became final sixty days later, on February 10, 2012, when the time for filing an appeal expired.  See Rule 8.308, Calif. Rules of Court; Mendoza v. Carey, 449 F.3d 1065, 1067 (9th Cir. 2006).  AEDPA's one-year limitation period for commencing a federal habeas action began the next day, on February 11, 2012.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).

Therefore, absent a period of statutory or equitable tolling, the last day for commencing the instant action was February 10, 2013.  Petitioner commenced this action four months later, on June 28, 2013.[2]

////

---

[1] These dates are by application of the "mailbox rule" established by Houston v. Lack, 487 U.S. 266, 276 (1988) ("mailbox rule" establishes the filing date of a habeas petition as the date petitioner delivered the petition to prison authorities for mailing to the court).  (See ECF No. 1 at 99; ECF No. 13 at 8.)

[2] Had petitioner sought to file his federal habeas petition based upon the California Supreme Court's September 21, 2011 denial of review, he would not have been in a more favorable position, from a statute of limitations perspective.  The ninety-day period for filing a petition for writ of certiorari with the United States Supreme Court expired on December 20, 2011.  Supreme Court Rule 13; Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999).  Thus, the one-year limitation period for filing a federal habeas petition, pursuant to 28 U.S.C. § 2244(d)(1), commenced on December 21, 2011.  Patterson, supra, 251 F.3d at 1246 (citing Fed. R. Civ. P. 6(a)).  Absent a period of tolling, the last day for commencing this action would have been December 20, 2012.  Petitioner filed his initial petition six months later, on June 28, 2013.

1   Petitioner concedes that he commenced this action after expiration of the limitations
2   period but has argued, since commencing this action, that he should be excused from any
3   consequences attendant to his late filing due to his limited understanding of the law and the
4   alleged failure of his appellate counsel to inform petitioner when the California Supreme Court
5   denied his petition for review.  Petitioner's argument is premised on equitable tolling.  Petitioner
6   is not entitled to statutory tolling because he did not file any state collateral challenges to his
7   conviction or sentence.  28 U.S.C. § 2244(d)(2).

8   Giving petitioner every benefit of the doubt, and because petitioner has filed a relatively
9   succinct opposition, referencing his prior arguments, the court now sets forth all of petitioner's
10  arguments and evidence.  In his original petition (ECF No. 1), petitioner alleged ineffective
11  assistance of his appellate counsel, Mr. Scott Concklin, based on counsel's alleged failure to
12  notify petitioner that his petition for review had been denied "so I can fill out an Habeas Corpus
13  in a timely manner."  (ECF No. 1 at 6.)  Petitioner alleged in full (id.) (sic):

> Scott Concklin did not notify petitioner of denial from State Supreme Court, or the fact he was not petitioner's Attorney.  He told petitioner he would see Appeal through to the end, but when ruling came, he never told me so I can fill out an Habeas Corpus in a timely manner.  If it were not for petitioner's Mother, he still would not know the Cancellation from Attorney Scott Concklin and The State Supreme Court.

18  Petitioner made the following "Argument" in full (id. at 7) (sic):

> On approximately May 2008, Mr. Scott Concklin told me that he would represent me through my appeal.  I waited patiently to hear from him for 2 years and got no word – I am not a lawyer so therefore I knew nothing to time lengths/restraints.  Please accept my petition in good faith and give it the credit it entails.  I feel my Appellate Attorney has worked hard to help me in this case.  I believe he has shown good merit in all of his claims.  He was probably overworked and thought he notified me of his completion on my case.  Please see exhibit A [Petition for Review filed in the California Supreme Court].
>
> My mother, Darla Jones, was the one who informed me of his completion on my case after numerous attempts and phone calls.  Please see exhibit B [see below].

27  Exhibit B includes a June 11, 2013 letter signed (not under penalty of perjury) by
28  petitioner's mother, Darla Jones, addressed "To Whom It May Concern," and provides in full

5

1  (ECF No. 1 at 97):

> I am Clifton D. Jones [inmate number] ['s] mother. I have been trying to talk to his attorney for a while now. He (Scott Concklin) called me back Friday, June 8, 2013 and told me he was no longer Clifton's attorney. Now, I'm in the process of finding a new attorney for my son (Clifton). It is going to take some time. Thank you for your patience and understanding.

In response to this initial petition and petitioner's other filings, the court granted petitioner's request to proceed in forma pauperis, denied without prejudice his request for appointment of counsel, and directed petitioner to file a statement either: (1) requesting voluntary dismissal of this action, without prejudice, so that he could timely exhaust his state court remedies; or (2) explaining why petitioner's action should proceed in this court. (ECF No. 10.)

In response, petitioner repeated his prior arguments, again stating that it was not until June 8, 2013, that Mr. Concklin informed petitioner's mother that he no longer represented petitioner and that his petition for review had been denied. Petitioner also stated (but not in a formal declaration) as follows (ECF No. 11 at 1-2) (sic):

> Around May 2008, Scott Concklin informed me that he would be my appointed Counsel. Through May and many more months, I tried to call &/or write, but all I would receive was envelopes with extension of time requests, and my Opening Briefs for the Court of Appeals and the Supreme Court. Upon any further contact was met with nothing. I tried to write C-Cap and the Court of Appeals to find out about my case, but was told everything must be directed to and through my Appellant Attorney and not them. Therefor I tried having my sister contact him, but she couldn't and eventually gave up. I asked my Mother to please contact him and don't give up because I told her what the C-Cap and Court of Appeals told me, and I thought I would get the same response from the Supreme Court. After an grueling and exhausting relentless effort, she was finally rewarded with contact and admitance from him that I was denied in 2011 and he was no longer my Attorney! I am no lawyer so I know of no time restraints or lengths. . . . I do not know the proper steps and procedures of seeing a writ through. I would like to express that I feel this is Ineffective Assistance of Counsel due to the fact that I wasn't informed of the case status until 2013 by my Mother.

Petitioner repeated, nearly verbatim, his prior "Argument" (cf. ECF No. 11 at 5, with ECF No. 1 at 7), and submitted the same exhibits. In addition, petitioner submitted an undated declaration, signed by petitioner under penalty of perjury, on a form used by the superior court,

6

1 which provides in full (ECF No. 11 at 7 (Exh. A)):

> I did not know of my case denial or my Appellant Attorney was no longer representing me for it was never easy getting in contract with him because there wasn't any correspondence between us. If it were not for my mother, Darla Jones, I would not know of this information, she had to keep trying consistanly (sic) until she persevered. Because of IAC and the time it took compiling this writ is the reason I'm just now contacting you asking for the review of my writ.

Petitioner's response also included the following exhibits (irrelevant because they preceded the Court of Appeal's decision): (1) an undated letter addressed to Sir or Madame, signed by petitioner, which appears to be an inquiry to the Court of Appeals about the status of petitioner's appeal (ECF No. 11 at 3); and (2) a March 11, 2010 letter from the Court of Appeal, Third Appellate District, informing petitioner that "[a]ny and all communication with this court regarding your pending appeal must be transmitted to the court by counsel of record" (id. at 4).

This court found, provisionally, that petitioner may be able to demonstrate entitlement to equitable tolling, and therefore dismissed the original petition with leave to file an amended petition clearly setting forth his substantive claims. (ECF No. 12.) Petitioner thereafter filed the operative Amended Petition (ECF No. 13), and respondent filed the pending motion to dismiss (ECF No. 18). In his opposition, petitioner provides the following additional argument (ECF No. 20 at 2-3) (sic):

> Petitioner did not appeal the 12/12/2011 judgement because of not only lack of knowing law and its procedures but being informed via appellate program that he had representation for the course of the appeal process and having to take the steps to get reply from appeal counsel informing petitioner that it was there lack of diligence and communication informing petitioner where they stood and what level the appeal was actually in. From the limitation begin 2/11/2012 and ending 2/10/2013, the four month of excession was clearly by the inconsistant of petitioner's appeal counsel who only acknowledged this after the fact of petitioner consistently requesting the disposition of all the timeliness. Finally being told via mail that such counsel was no longer acting on petitioner's behalf. This action should not be time-barred with the unique circumstance of the four-month excession should be considered.

////

////

V. <u>Discussion</u>

Petitioner asserts that the following "extraordinary circumstances" prevented the timely commencement of this federal habeas action: (1) the failure of appellate counsel to timely inform petitioner that his petition for review was denied by the California Supreme Court; and (2) petitioner's lack of knowledge about the "law and its procedures." Petitioner asserts that both he and his mother acted diligently to contact appellate counsel and ascertain the status of his petition for review.

Petitioner's lack of legal knowledge is not an "extraordinary circumstance" warranting equitable tolling. The Ninth Circuit has held that a petitioner's pro se status and claims of ignorance of the law are insufficient to justify equitable tolling. See <u>Rasberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); <u>Hughes v. Idaho State Board of Corrections</u>, 800 F.2d 905, 909 (9th Cir. 1986) (pro se prisoner's illiteracy and lack of knowledge of law unfortunate, but insufficient to establish cause); <u>Fisher v. Ramirez–Palmer</u>, 219 F.Supp.2d 1076, 1080 (E.D. Cal. 2002) ("[I]gnorance of the law does not constitute such extraordinary circumstances." (Citation omitted.); <u>Sperling v. White</u>, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (a lack of knowledge of the law is not an "extraordinary circumstance" beyond the petitioner's control sufficient to warrant equitable tolling of the limitations period); see also <u>Turner v. Johnson</u>, 177 F.3d 390, 392 (5th Cir. 1999) ("neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling"). Thus, petitioner is not entitled to equitable tolling on the ground that he has limited knowledge of the law or legal procedures.

Further, for the following reasons, the court finds that the alleged inaction of petitioner's appellate counsel was not an "extraordinary circumstance" warranting equitable tolling. The court initially notes that, although petitioner was provided three distinct opportunities, he has not supported his arguments with significant documentary evidence or a sworn declaration providing exact dates. The only relevant date provided by petitioner is June 8, 2013, when petitioner's

////

mother allegedly learned by telephone[3] that Mr. Concklin had withdrawn his representation and that the petition for review had been denied. Petitioner leaves to speculation the dates he and his mother allegedly telephoned, left voice messages for, or wrote to Mr. Concklin, and therefore the dates when Mr. Concklin failed to respond. Equitable tolling is not available due to an attorney's "ordinary negligence." Lawrence v. Florida, 549 U.S. 327, 336 (2007). Rather, equitable tolling may be available only if counsel's "conduct was so deficient as to distinguish it from the merely negligent performance of counsel. . . ." Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003). "Non-responsiveness may be unprofessional, but it is hardly unheard of." Id.

Nevertheless, even assuming that petitioner learned from Mr. Concklin on June 8, 2013, that his petition for review had been denied on September 21, 2011, the evidence submitted by respondent demonstrates that petitioner, by other means, was timely informed of the denial of review, as well as the subsequent proceedings in the superior court.

Respondent has submitted a copy of petitioner's mail log from June 2011 through February 2013, which identifies petitioner's incoming and outgoing mail during this period. (See Dfs. Ldgd. Doc. 6.) While the log appears to support petitioner's contention that Mr. Concklin did not communicate with petitioner, at least by mail, during the period July 21, 2011[4] to April 18, 2012,[5] the log demonstrates that petitioner was nevertheless timely informed of the Supreme Court's September 21, 2011 denial of review. Petitioner's incoming mailing log indicates that petitioner received mail from the California Court of Appeal, on September 28, 2011. It is

---

[3] Petitioner does not explain the apparent (but perhaps reconcilable) inconsistency in his statement, set forth in his opposition, that he was "[f]inally . . . told via mail that such counsel was no longer acting on petitioner's behalf." (ECF No. 20 at 3.))

[4] It is reasonable to infer that, in his mail delivered to petitioner on July 21, 2011 (three days after petitioner's petition for review was filed in the California Supreme Court), Mr. Concklin forwarded to petitioner a copy of the petition for review, which included a copy of the California Court of Appeal's June 8, 2011 decision.

[5] The nature of Mr. Concklin's April 18, 2012 mailing to petitioner is unclear. This date was four months after the trial court amended its judgment in response to the Court of Appeal's decision.

9

reasonable to infer that this mail was a copy of the remittitur[6] issued by the Court of Appeal on September 23, 2011, following the California Supreme Court's denial of review on September 21, 2011. This inference is supported by the "mailing list" attached to the remittitur, which included service on petitioner at his prison address, as well as Mr. Concklin at his business address. (See Dfs. Ldgd. Doc. 7.)

Petitioner's receipt of the Court of Appeal's September 23, 2011 remittitur, by mail on September 28, 2011, was notice that his petition for review had been denied. When review of a Court of Appeal decision is sought in the California Supreme Court, the remittitur is issued after the Supreme Court's denial of review.[7] Even if petitioner did not so interpret the remittitur, he thereafter received mail from his re-appointed trial counsel, Mr. Michael Long, on November 8, 2011, and December 16, 2011. These dates closely follow, respectively, the superior court's commencement of further proceedings and re-appointment of trial counsel on November 2, 2011, and the setting of restitution and issuance of the amended abstract of judgment on December 12, 2011. (See Dfs. Ldgd. Doc. 5.) Significantly, the superior court's issuance of the amended abstract of judgment triggered AEDPA's statute of limitations. Moreover, timely notice of these proceedings on remand in the superior court further alerted petitioner to the denial of his petition for review in the California Supreme Court.

////

---

[6] "The essence of remittitur is the returning or revesting of jurisdiction in an inferior court by a reviewing court. The reviewing court loses jurisdiction at the time of remittitur and the inferior court regains jurisdiction. Remittitur transfers jurisdiction back to the inferior court so that it may act upon the case again, consistent with the judgment of the reviewing court." Cal. Civ. Practice Proc. § 41:51 (2013) (citing Gallenkamp v. Superior Court, 221 Cal. App. 3d 1 (5th Dist. 1990)).

[7] "A Court of Appeal decision becomes final as to that court 30 days after filing. A party seeking review by the Supreme Court must serve and file a petition within 10 days after the decision of the Court of Appeal becomes final as to that court. The Supreme Court then has up to 90 days, including extensions, within which to order review of the Court of Appeal decision. Notwithstanding the denial of the petition by the Supreme Court on an earlier date, the clerk of the Court of Appeal normally withholds issuance of the remittitur until the expiration of the period during which review in the Supreme Court may be determined. The remittitur is deemed issued on the clerk's entry of it in the record of the case. It is to be transmitted immediately, with a certified copy of the opinion, to the superior court. Upon issuance of the remittitur, the clerk of the Court of Appeal mails notice thereof to the parties." Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc., 202 Cal. App. 3d 330, 335 (2d Dist. 1988) (citations and fns. omitted).

If petitioner failed to so construe the official documents he received, the fault lies in petitioner's failure to diligently pursue and ascertain their meaning, nature and purpose. Petitioner could have directed any inquiries to his re-appointed trial counsel, Mr. Long.

Petitioner's alleged diligence after contacting Mr. Concklin, in speedily preparing his federal habeas petition from June 8, 2013, to July 3, 2013, is less relevant than his diligence between July 19, 2011 (when the petition for review was filed), and February 10, 2013 (expiration of the statute of limitations). "To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." Doe v. Busby, supra, 661 F.3d at 1013 (citations omitted.) "[W]here attorney misconduct is the claimed circumstance causing the untimeliness, courts consider, inter alia . . . whether the petitioner had the means to consult alternate counsel." Id. (citing Baldayaque, supra, 338 F.3d at 153). Because petitioner was receiving regular service of superior court filings from his trial counsel, whom petitioner could have consulted as to their significance, petitioner's apparent failure to do so demonstrates a lack of due diligence. For these several reasons, the court finds that petitioner has failed to meet his burden of demonstrating that an extraordinary circumstance prevented the timely filing of the instant action.

Discerning no extraordinary circumstance warranting equitable tolling, nor due diligence by petitioner, the court finds that petitioner's commencement of this action after expiration of AEDPA's one-year statute of limitations requires dismissal.

VI. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 18) be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

he shall also address whether a certificate of appealability should issue and, if so, why and regarding which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 11, 2014

/jone1379.mtd.hc

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE